1
2
3
4
5
6
7
8
9

# IN THE UNITED STATES DISTRICT COURT FOR THE

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **TIMOTHY LUCKEY**, | 1:13-cv-0332-AWI-SAB |
| Plaintiff, | **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| **VISALIA UNIFIED SCHOOL DISTRICT**, | |
| Defendant. | |

## I. Introduction

Plaintiff Timothy Luckey is proceeding *pro se* in bringing this employment discrimination action against the Visalia Unified School District ("the District"). Doc. 1. This action proceeds on Plaintiff's Third Amended Complaint ("TAC"). The Magistrate Judge screened that complaint on October 7, 2013, and found cognizable claims against the District under Title VII of the Civil Rights Act of 1964.  On September 23, 2015, the District filed a motion for summary judgment. That motion was set for hearing on November 2, 2015. Plaintiff filed no opposition and Defendant filed no reply. The matter was taken under submission and is now ripe for adjudication. For the following reasons, Defendant's motion will be granted.

## II. Background

Timothy Luckey is an African-American male. He was hired by the District in October of 2007 as a General Activities Aide for Crestwood Elementary School. Joint Statement of Undisputed Facts ("JSUF") at ¶ 2. Of the ten people hired to fill Aide roles, Mr. Luckey was the

only male and the only African-American. *Id* at ¶ 4. He worked for 2.25 hours per day at a rate of $10.78 per hour. *Id*. at ¶ 2. In that role, Mr. Luckey was required to "assist with direction of playground and cafeteria activities, plan and organize games, work with students to encourage participation in activities, supervise safety and welfare of students, and maintain proper utilization of playground equipment."  *Id*. at ¶ 3.

When Mr. Luckey began as an Aide he was permitted by then-Principal Barbara Davis to pull remove students having behavioral problems from class and talk to them in the hallway. JSUF at ¶ 6. Shortly after Mr. Luckey was hired, former-Principal Barbara Davis was replaced by now-Principal Jim Sullivan. *Id*. at ¶ 5. As a result of that change, Assistant Principal Amy Smythe became Mr. Luckey's direct supervisor. *Id*. at ¶ 5. Principal Sullivan directed Mr. Luckey to cease removing students from class and to let others address student behavioral issues. *Id*. at ¶ 7. According to the District, Mr. Luckey continued to pull students from class to discuss behavioral issues on at least two additional occasions. *Id*. at ¶ 8. Mr. Luckey agreed that he removed students from the classroom twice after Mr. Sullivan began. In the first instance, Mr. Luckey counseled two girls who had gotten into a fight so because he had not yet been informed of the policy change preventing him from counseling students. Deposition of T. Luckey ("Luckey Depo.") at 71:2 – 72:3. In the second instance, Mr. Luckey contends that he counseled a boy because he was specifically asked by the parents of that boy to attend to him if behavioral issues arose. Luckey Depo. at 73:2-22.

On October 30, 2008, Mr. Luckey had an employee evaluation with Smythe and Sullivan. JSUF at ¶ 9. The evaluation includes a rating of Mr. Luckey's "Personal Qualifications," "Job Skill Qualifications," and a section for comments or recommendations by the evaluator. Declaration of Jim Sullivan, Doc. 53-2 ("Sullivan Decl.") at Exh. A. The comment section reads in full:

> Mr. Luckey has an excellent rapport with students. He is always on time and even volunteers extra hours. He has been asked not to pull students out of class and has continued to do so. I would like to see Mr. Luckey physically roaming about watching students as opposed to staying in one area. Also, while Mr. Luckey has a great attitude while performing certain job duties, his emotions tend to show through when asked to do something less appealing.

Sullivan Decl. at Exh. A. After the evaluation, Mr. Luckey informed Principal Sullivan that he intended make a complaint to the District's human resources department regarding Principal Sullivan's refusal to permit Luckey to remove students from class to counsel them. JSUF at ¶¶ 12-13. Mr. Luckey did so. *Id.* Principal Sullivan began ignoring Mr. Luckey after that encounter. *Id.* at ¶ 14.

The District has detailed multiple other incidents where Mr. Luckey allegedly failed to comply with either District standards or direction from his supervisors. On one occasion, Mr. Luckey, without permission, conducted an investigation into a student bringing a knife to campus. Sullivan Decl. at ¶ 9, Exh. B. Mr. Luckey denies having done this. Luckey Depo. at 75:5 – 76:25. Next, the District contends that Mr. Luckey worked in the classroom without approval. JSUF at 17. Mr. Luckey agrees that he was in the classroom that day. However, Mr. Luckey explained that he was in the classroom because Mr. Sullivan instructed him to work in the classroom if he had nothing else to do. Luckey Depo. at 84:5-20. In a third incident, Mr. Luckey contacted the parent of students despite having been advised not to do so. JSUF at ¶¶ 55-57.

Defendant has detailed similar incidents between May 22, 2009 and March 17, 2010, where Mr. Luckey allegedly failed to properly seek permission for and document absences, JSUF at ¶¶ 19-35, 65-67, repeatedly complained about assignments, JSUF at ¶ 37, and neglected job assignments, JSUF at ¶ 38. *See* Sullivan Decl. at ¶¶ 11-14, Exh. D-G.  Mr. Luckey was asked about those incidents in his deposition and disagreed with the determinations that he was in the wrong in any of those incidents. Mr. Luckey made clear that he believed that those incidents were indicative of the mistreated he suffered under Mr. Sullivan.

Mr. Luckey testified regarding an incident that he believed to be an indication of racial prejudice on the part of Mr. Sullivan. Mr. Luckey was assigned to the Kindergarten playground in early 2010.  Luckey Depo. at 211. That playground was smaller than the main playground and completely enclosed by a six-foot chain link fence. Mr. Sullivan required Mr. Luckey to remain in the Kindergarten playground supervise one or two special needs students for approximately 1.25 hours per day. JSUF at 40.  Mr. Luckey asked Mr. Sullivan to be reassigned or rotated to the

main playground. Luckey Depo. at 196. Mr. Sullivan refused. *Id.* Mr. Luckey attributed the refusal to race and sex discrimination on the part of Mr. Sullivan. Luckey Depo. at 195:24 – 196:19, 198:25 – 203:20. At some point in that timeframe, Mr. Luckey approached Mr. Sullivan on the playground and Mr. Sullivan directed Mr. Luckey to return to the Kindergarten playground by forcefully pointing in that direction without speaking. Luckey Depo. at 193:25 – 194:7. Mr. Luckey testified that the pointing made Mr. Luckey feel like a dog, directed to a cage. *Id.*

On March 22, 2010, Mr. Luckey was issued an employee evaluation signed by Ms. Smythe that recommended his dismissal. Declaration of Fernie Marroquin, Doc. 53-1 ("Marroquin Decl.") at ¶ 4, Exh. H. The evaluation explained that Mr. Luckey "fail[ed] to call in absences, show[ed] up late several times…, complain[ed] and argu[ed] with supervisors, sp[oke] with parents of students without permission, and needed to be repeatedly reminded of his job duties." *Id.* Two days later, Administrator of Human Resources Development Fernie Marroquin gave Mr. Luckey notice that he was being placed on paid administrative leave while the content of the evaluation recommending his dismissal was investigated. *Id.* at ¶ 5, Exh. I.

During the time that the dismissal recommendation was being considered, Mr. Luckey contacted the EEOC, complaining of race discrimination, sex discrimination, and retaliation. Marroquin Decl. at ¶ 6, Exh. J. He warned the District that he would take legal action if he was terminated. *Id.* Approximately two weeks later, the Governing Board of the Visalia Unified School District voted to reduce or eliminate thirteen positions within the District. Marroquin Decl. at Exh. K. The General Activity Aide position that Mr. Luckey occupied was reduced from two hours per day to one-quarter of an hour per day. *Id.* at Exh. K, L. It is undisputed that the reduction in hours was a response to budget concerns, not discrimination. Luckey Depo. at 162:16-20.

On April 15, 2010, Mr. Marroquin sent Mr. Luckey a notice of proposed disciplinary action, placing him on unpaid leave pending the final termination decision by the District's governing board. Marroquin Decl. at ¶ 8, Exh. M. Mr. Luckey was informed that he had the right to appeal the recommendation. *Id.* In order to do so, Mr. Lucky was required to submit a request

for hearing form by April 20, 2010. Mr. Luckey timely submitted the form and a hearing was scheduled. *Id.* at ¶ 9. The day before the hearing, Mr. Luckey submitted a resignation letter to Mr. Marroquin. Marroquin Decl. at ¶ 17. In the letter, Mr. Luckey indicated that he felt that he had "no choice but to resign" and that he did so "under duress and coercion." Marroquin Decl. at Exh. V.

### III. Legal Standard

The Federal Rules of Civil Procedure provide for summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Early resolution of issues that present no dispute genuine dispute of material fact serves a principal purpose of Rule 56 – disposing of unsupported claims and defenses. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323 (citations omitted); *see* Fed. R. Civ. P. 56(c)(1)(A). "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *In re Oracle Corp. Securities Litigation,* 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex*, 477 U.S. at 325). If the moving party meets its initial burden, the burden shifts to the non-moving party to present evidence establishing the existence of a genuine dispute as to any material fact. *See Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.,* 475 U.S. 574, 585-86 (1986). To overcome summary judgment, the opposing party must demonstrate a factual dispute that is both material, i.e., it affects the outcome of the claim under the governing law, *see Liberty Lobby,* 477 U.S. at 248; *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir. 1987), and genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Wool v. Tandem Computers, Inc.,* 818 F.2d 1433, 1436 (9th Cir. 1987).

1   In resolving the summary judgment motion, the court examines the pleadings,

2   depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

3   any. Rule 56(c); *SEC v. Seaboard Corp.,* 677 F.2d 1301, 1305–06 (9th Cir. 1982). The court

4   must construe all facts and inferences in the light most favorable to the non-moving party. *See*

5   *Liberty Lobby*, 477 U.S. at 255. However, conclusory and speculative testimony does not raise a

6   genuine factual dispute and is insufficient to defeat summary judgment. *See Thornhill*

7   *Publ'g Co., Inc. v. GTE Corp.,* 594 F.2d 730, 738–39 (9th Cir. 1979).

8   **IV. Discussion**

9   Defendant has read Plaintiff's complaint to allege claims for (1) race and sex

10  discrimination, (2) creation of a hostile work environment, (3) retaliation, (4) wrongful

11  constructive discharge, and (5) breach of settlement agreement. Defendant's reading goes

12  beyond the claims that the Magistrate Judge identified as cognizable in his order screening the

13  Third Amended Complaint. The only claims before this Court are Plaintiff's discrimination and

14  retaliation claims. Only those claims will be discussed.

15  A. Race and Sex Discrimination

16  Title VII provides that an employer may not "discriminate against any individual with

17  respect to his compensation, terms, conditions, or privileges of employment, because of such

18  individual's race ... or national origin." 42 U.S.C. § 2000e–2(a)(1). California's Fair Employment

19  and Housing Act ("FEHA") uses largely the same language and promotes the same objective as

20  Title VII. *See* Cal. Gov. Code § 12940(a). As a result, the Title VII framework is applied to

21  claims brought under FEHA. *Metoyer v. Chassman,* 504 F.3d 919, 941 (9th Cir. 2007) (citation

22  omitted). "A person suffers disparate treatment in his employment when he or she is singled out

23  and treated less favorably than others similarly situated on account of race," sex, or another

24  protected characteristic. *Cornwell v. Electra Central Credit Union,* 439 F.3d 1018, 1028 (9th Cir.

25  2006). In disparate treatment cases, plaintiffs can prove intentional discrimination through direct

26  or indirect evidence. "Direct evidence is evidence which, if believed, proves the fact of

27  discriminatory animus without inference or presumption." *Godwin v. Hunt Wesson, Inc.*, 150

28  F.3d 1217, 1221 (9th Cir. 1998). Because direct proof of intentional discrimination is rare,

disparate treatment claims may be proved circumstantially. *See Dominguez–Curry v. Nevada Transp. Dept.*, 424 F.3d 1027, 1037 (9th Cir. 2005). To do so, plaintiff must satisfy the burden-shifting analysis set out by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), and *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981). *Dominguez–Curry*, 424 F.3d at 1037.

        In this instance, Plaintiff has provided no direct evidence of racial discrimination or harassment that, if believed, would prove the fact of discriminatory animus without inference or presumption. As a result, Plaintiff's Title VII claim is governed by the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). That framework places the initial burden with Plaintiff to establish a prima facie case by showing "(1) he is a member of a protected class; (2) he was qualified for his position [or was performing satisfactorily]; (3) he experienced an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Peterson v. Hewlett-Packard, Co.*, 358 F.3d 599, 603 (9th Cir. 2004); *accord Fonseca v. Sysco Food Servs. of Arizona, Inc.*, 374 F.3d 840, 874 (9th Cir. 2004). That initial burden requires Plaintiff to produce "very little" evidence; he need only present evidence that is "more than 'purely conclusory allegations of alleged discrimination, with no concrete relevant particulars'" *Peterson*, 358 F.3d at 603 (citation omitted).  If Plaintiff does so, the burden shifts to the Defendant to articulate a legitimate, nondiscriminatory reason for its employment action. *McDonnell Douglas*, 411 U.S. at 802. If Defendant meets that burden, Plaintiff can prove disparate treatment by offering evidence that the proffered explanation is pretextual. *McDonnell Douglas*, 411 U.S. at 804. The Court applies that framework on summary judgment. *Zeinali v. Raytheon Co.*, 636 F.3d 544, 552 (9th Cir. 2011).

        *1. Plaintiff's Prima Facie Case of Discrimination*

                a. Protected Class

        First, it is undisputed that Mr. Luckey, an African-American male, is a member of a protected class.

7

1        b. Satisfactory Performance

2        As to the second element of the prima facie case, there is a dispute; Plaintiff contends that

3   prior to Mr. Sullivan having become principal, all of his reviews were positive and that he

4   continued performing in the same manner; Defendant contends that Plaintiff's job performance

5   was unsatisfactory. Plaintiff has not provided any performance evaluations that predate Mr.

6   Sullivan becoming principal. The first performance evaluation that is before this Court was

7   issued on October 30, 2008, by Assistant Principal Smith and Principal Sullivan, and was largely

8   positive. The following performance evaluations indicate that Mr. Luckey was disciplined for

9   failing to properly report absences, conducting an unauthorized investigation regarding a

10  student's possession of a weapon, and refusing to comply with his supervisors' requirements.

11  Plaintiff indicated his disagreement with most of those reviews. Moreover, those negative

12  performance reviews of Plaintiff have all been shaped, at least in part, by the actor alleged to

13  hold discriminatory motive. Plaintiff's assertion in his complaint and deposition that he was

14  performing his job satisfactorily is sufficient to establish that he was performing satisfactorily for

15  purposes of making a prima facie showing. *Aragon v. Republic Silver State Disposal, Inc*., 292

16  F.3d 654, 660 (9th Cir. 2002) (holding that an employee's self-assessment of his performance is

17  sufficient to show satisfactory performance for purposes of proving a prima facie case but not to

18  show that an employer's proffered non-discriminatory reason is pretextual).

19        c. Adverse Employment Action

20        An adverse employment action is actionable in a discrimination claim under Title VII

21  when it "materially affect[s] the compensation, terms, conditions, or privileges ... of

22  employment." *Fonseca v. Sysco Food Servs. of Ariz. Inc.*, 374 F.3d 840, 847 (9th Cir. 2004);

23  *Chuang v. Univ. of Cal. Davis,* 225 F.3d 1115, 1126 (9th Cir. 2000). The Ninth Circuit "define[s]

24  adverse employment actions broadly," and has "found that a wide array of disadvantageous

25  changes in the workplace constitute adverse employment actions." *Ray v. Henderson*, 217 F.3d

26  1234, 1240-1244 (9th Cir. 2000). For instance, courts universally recognize that termination

27  (constructive or actual), *Pennsylvania State Police v. Suders*, 542 U.S. 129, 141 (2004); *Brooks*

28  *v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000), refusal to consider for promotion, *see*

1   *Nat'l R.R. Passenger Corp v. Morgan*, 536 U.S. 101, 114 (2002); *Brooks*, 229 F.3d at 928,

2   refusal to hire, *Zeinali*, 636 F.3d at 552, and reduction of pay or demotion, *id.*, are all adverse

3   employment actions under Title VII. Although less clearly adverse, service of notice of

4   termination, dissemination of a negative employment reference, *Brooks*, 229 F.3d at 928,

5   issuance of an undeserved negative performance review, *Yartzoff v. Thomas*, 809 F.2d 1371,

6   1376 (9th Cir. 1987), placement on unpaid suspension, *Raad v. Fairbanks N. Star Borough Sch.*

7   *Dist.*, 323 F.3d 1185, 1196 (9th Cir. 2003), reassignment to an unpleasant or less desirable job

8   duty, or even a lateral transfer have all been found to be adverse employment actions under Title

9   VII. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 71 (2006); *Brooks v. City of San*

10  *Mateo*, 229 F.3d 917, 928 (9th Cir. 2000); *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir.

11  1987); *see also Coszalter v. City of Salem*, 320 F.3d 968, 976-977 (9th Cir. 2009) ((adopting

12  EEOC guidelines to define "adverse employment action" and applying those guidelines to find

13  that "some, perhaps all, of the following acts, considered individually, were adverse employment

14  actions…: the transfer to new duties…; an unwarranted disciplinary investigation…; an

15  unwarranted assignment of blame…; a reprimand containing a false accusation…; a criminal

16  investigation…; repeated and ongoing verbal harassment and humiliation…; a ten-day

17  suspension from work…; a threat of disciplinary action…; an unpleasant work assignment…; a

18  withholding of customary public recognition…; an unwarranted disciplinary action…; and two

19  consecutive ninety-day "special" reviews of work quality….").[1] Title VII does not protect

20

---

21  [1] There has been some discussion among state and federal courts in this circuit as to whether an adverse employment action for purposes of a retaliation claim is broader than for a claim of discrimination. *Compare Rodriguez v.*

22  *Central School Dist. 13J*, 2013 WL 6576278, *9 (D. Org. Oct. 4, 2013) ("The concept of 'adverse employment action' is more broadly construed in the retaliation context than in the substantive discrimination context in a

23  disparate treatment claim.") (citation and editing marks omitted) *with Yanowitz v. L'Oreal USA, Inc*., 36 Cal.4th 1028, 1050 (2005) ("[T]he Legislature intended to extend a comparable degree of protection both to employees who

24  are subject to the types of basic forms of discrimination at which the FEHA is directed—that is, for example, discrimination on the basis of race or sex—and to employees who are discriminated against in retaliation for

25  opposing such discrimination, rather than to interpret the statutory scheme as affording a greater degree of protection against improper retaliation than is afforded against direct discrimination.") This Court agrees with the *Yankowitz*

26  court and treats the term "adverse employment action" as encompassing the same conduct in the retaliation and discrimination contexts. That conclusion in mind, retaliation claims under 42 U.S.C. § 2000e-3 may be based on

27  conduct that does not constitute an adverse employment action. *See Burlington*, 548 U.S. at 68 ("[T]he antiretaliation provision does not confine the actions and harms it forbids to those that are related to employment

28  occur at the workplace[;]"it covers those employer actions "that would have been materially adverse to a reasonable employee or job applicant," wherever those actions may occur.)

1    employees from petty slights, minor annoyances and lack of good manners. *Burlington*, 548 U.S.

2    at 67; *see Akers v. County of San Diego*, 95 Cal.App.4th 1441, 1454-1455 (2002) ("A change

3    that is merely contrary to the employee's interests or not to the employee's liking … does not

4    elevate that act" to the level of an adverse employment action.). That said, whether an

5    employer's action is sufficiently adverse is a highly individualized and fact-driven inquiry that

6    takes into account the circumstances of the affected employee and the workplace context of the

7    claim; an employment action that is actionable in one context may not be so in another. *See*

8    *Yankowitz*, 36 Cal.4th at 1052.

9           Based on the parties' long chronology of Mr. Luckey's employment under Mr. Sullivan,

10   the Court infers that Mr. Luckey attempted to identify the following items as possible adverse

11   employment actions for this claim: (i) issuance of the October 30, 2008 performance evaluation,

12   reprimanding Mr. Luckey for removing a student from class, (ii) Mr. Sullivan's refusal to talk to

13   Mr. Luckey or shake his hand, (iii) issuance of the December 16, 2008 employee conference

14   report, reflecting Mr. Luckey's unauthorized investigation of a student, (iv) issuance of the

15   March 11, 2009 employee conference report, reprimanding Mr. Luckey for working in a

16   classroom without approval and restricting him to playground and cafeteria assignments,

17   (v) issuance of  the May 28, 2009  letter of reprimand, reprimanding Mr. Luckey for failing to

18   properly obtaining permission for an absence and being dishonest about his purpose in missing

19   work, (vi) issuance of the December 4, 2009 letter of reprimand, reprimanding Mr. Luckey for

20   again failing to properly call in and document his absence, (vii) reassignment of Mr. Luckey's

21   job duties on February 1, 2010, to include supervising special needs students for 1.25 hours per

22   day, 50 minutes of which were on the fenced kindergarten playground, (viii) issuance of the

23   February 12, 2010 letter of reprimand, reprimanding Mr. Luckey for failing to provide a doctor's

24   note to document his use of sick leave on January 13, 2010, (ix) issuance of the March 23, 2010

25   letter of reprimand, reprimanding Mr. Luckey for discussing matters of student discipline with

26   the student that the discipline related to and again failing to properly call in an absence, (x)

27   issuance of the March 22, 2010 recommendation for dismissal, and (xi) constructive termination.

28

Although a lateral transfer or shift in job duties can constitute an adverse employment action, *see Coszalter*, 320 F.3d at 976-977, no evidence has been submitted from which a jury could determine that the reassignment of Mr. Luckey's job duties – item (vii) – was adverse. Specifically, Mr. Luckey testified both that the other playground aides complained about the general playground duties that Mr. Luckey sought to rotate into, Luckey Depo. at 200:12-16, and that at least one of those aides also requested the kindergarten playground assignment that Mr. Luckey was assigned, Luckey Depo. at 203:21 – 204:3. Moreover, Mr. Luckey testified that "[he] loved his duties, [but he] didn't like the mistreatment and constant reprimanding and discipling from [Mr. Sullivan]." Luckey Depo. at 208:1-3. Based on that record, the reassignment of Plaintiff's job duties was not an adverse employment action.[2]

Similarly, Mr. Sullivan's refusal to talk to or shake hands with Mr. Luckey does not constitute an adverse employment action. *See Kortan v. California Youth Authority*, 217 F.3d 1104, 1112 (9th Cir. 2000) (Hostile "stares" and "hypercritic[ism]" of the employee's work were insufficient adverse employment actions to preclude summary judgment on a retaliation claim.)

All other items among that list could be actionable adverse employment actions.[3]

### d. Inference of Discrimination

In order to satisfy the fourth element, Plaintiff must prove that the circumstances surrounding the adverse actions give rise to an inference that the Defendant acted discriminatorily. "Evidence of ethnically biased remarks from a person in ... a position of authority" or a "senior decision-maker" is sufficient for that purpose. *Mustafa v. Clark County School Dist.*, 157 F.3d 1169, 1180 (9th Cir. 1998); *Mangold v. California Pub. Util. Comm'n*, 67 F.3d 1470, 1476-1477 (9th Cir. 1995). In this instance, Plaintiff alleges that he overheard Mr. Sullivan on several occasions making derogatory remarks about people that Mr. Luckey knew to be African American. In a first instance, he indicated that Mr. Sullivan, when speaking about an

---

[2] Even assuming that Plaintiff's reassignment could constitute an adverse employment action, Defendants submitted evidence indicating that the reassignment and refusal to permit Plaintiff to rotate was a measure taken to prevent any further misunderstanding regarding where Plaintiff was supposed to report for duty and what he was supposed to be doing. JSUF at ¶ 37; Luckey Depo. at 84:7-86:6. No evidence is present in the record to suggest that the stated non-discriminatory purpose is pretextual.

[3] Whether those actions were warranted and based on legitimate, non-discriminatory considerations will be considered in the discussion of whether Defendant met its burden under *McDonnell Douglas*.

African American student and how that student's mother had chased Mr. Sullivan from her

property, said something to the effect of "their kind should be somewhere else, and [we] want to

keep our schools clean or something negative." Luckey Depo. at 187:8-10; Luckey Depo. at

187:12-15 ("Q: Hold on. Hold on. So you're telling me you specifically heard Principal Sullivan

say their kind should not be here? [¶] A: I know I heard him say that.") Mr. Luckey also

indicated that Mr. Sullivan then indicated that he was glad that he had expelled another student

that Mr. Luckey knew to be African American. Luckey Depo. at 188:11-15.

This Court cannot determine that a jury could not reasonable read the statements that Mr.

Luckey attributes to Mr. Sullivan to be an indication of ethnic bias or racial animus. As to this

element, Plaintiff has met his very minimal burden to present more than "purely conclusory

allegations of alleged discrimination, with no concrete relevant particulars." *See Peterson*, 358

F.3d at 603.

*2. Defendant's Non-Discriminatory Reasons for Adverse Employment Actions*

Defendant has presented non-discriminatory explanations for each of the alleged adverse

employment actions. Each of the performance evaluations and letters of reprimand explain the

conduct that Mr. Luckey engaged in to warrant the discipline. For instance, the October 30, 2008

evaluation, action (i), was issued because Mr. Luckey removed students from class after having

been told that he was not permitted to. *See* Sullivan Decl. at Exh. A. Defendant contends that

each of the negative evaluations and letters of reprimand were issued for exactly the reasons

stated in those documents. *See* Doc. 53 at 11-14. Plaintiff's recommendation for dismissal was

based on the repeated disciplinary actions previously taken, most of which warned Plaintiff that

they could be the basis for his dismissal. Simply, Defendants allege that the adverse employment

actions were simply a reflection of his inability to perform as reasonably instructed.

*3. Plaintiff's Showing of Pretext*

"A plaintiff may demonstrate pretext in either of two ways: (1) directly, by showing that

unlawful discrimination more likely than not motivated the employer; or (2) indirectly, by

showing that the employer's proffered explanation is unworthy of credence because it is

internally inconsistent or otherwise not believable." *Earl v. Nielsen Media Research, Inc.*, 658

F.3d 1108, 1112-1113 (9th Cir. 2011). Although Plaintiff submitted no opposition, he was

afforded an opportunity in his deposition to explain how most of the adverse employment actions

taken were driven by discriminatory animus rather than inadequate performance. Mr. Luckey's

responses included admitting that he engaged in the conduct that he was reprimanded for,

Luckey Depo. at 71:21-73:22 (admitting that he continued removing students from class after

having been prohibited from doing so) 112:1 – 115:16 (admitting that he failed to appear at work

on March 19, 2009), admitting to having engaged in the conduct but denying that he was made

aware or understood that he wasn't supposed to engage in that conduct, Luckey Depo. at 75:9 –

77:9 (acknowledging receipt of the December 16, 2008 employee conference report and

admitting that he did not follow those directives); 85:7 – 86:22 (indicating that he was

disciplined for conduct that he believed he was supposed to engage in), and denying any

recollection of the incident giving rise to the reprimand, Luckey Depo. at 78:3-15; 88:3 – 89:3. It

is clear that Plaintiff and Principal Sullivan were not on the same page regarding Plaintiff's job

responsibilities. What is absent is any indication that the explanations offered by the District for

the adverse actions taken are false or that discrimination is a more likely explanation. At most,

Plaintiff suggests that Mr. Sullivan either disciplined him for engaging in activities that Mr.

Sullivan had forgot that he had assigned to Plaintiff, Luckey Depo. at 85:25 – 86:2, or

disciplined Plaintiff based on Mr. Sullivan having misunderstood Plaintiff, Luckey Depo. at

89:4-23. Plaintiff has failed to introduce the "specific" and "substantial" facts necessary to create

a triable issue of pretext. The only reasonable inference that can be drawn from the evidence

submitted is that Plaintiff was terminated because his employers found his work to be

unsatisfactory. Defendant is entitled to summary judgment on Plaintiff's claims of disparate

treatment.

**B. Retaliation**

      The same burden shifting framework applied above applies to a claim of retaliation. To

state a prima facie case of retaliation, plaintiff must show that (1) he engaged in a protected

activity, (2) he suffered an adverse employment action, and (3) there was a causal link between

the protected activity and the adverse employment action. *Villiarimo v. Aloha Island Air, Inc.*,

1   281 F.3d 1054, 1064 (9th Cir. 2002). To establish that he suffered an adverse employment

2   action, plaintiff must show that a reasonable employee would have found that the employment

3   action "well might have dissuaded a reasonable worker from making or supporting a charge of

4   discrimination." *Burlington*, 548 U.S. at 68 (internal quotation omitted). To show causation,

5   "Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the

6   challenged employment action." *University of Texas Southwestern Medical Center v. Nassar*,

7   133 S.Ct. 2517, 2528 (2013). In other words, plaintiff must show that "the unlawful retaliation

8   would not have occurred in the absence of the alleged wrongful action or actions of the

9   employer." Id. at 2533.

10        Once plaintiff establishes a prima facie case of retaliation, the burden shifts to defendant

11   to articulate a legitimate reason for the adverse employment action. *Surrell v. California Water*

12   *Service Co.*, 518 F.3d 1097, 1106 (9th Cir. 2008). If the defendant articulates a valid motive,

13   plaintiff must show that the stated reason is merely pretext for retaliation. *Id.* (citation omitted).

14        *1. Prima Facie Case*

15             a. Protected Activity

16        Under Title VII and FEHA engaging in a protected activity includes opposing unlawful

17   discrimination, making a charge of unlawful discrimination, or testifying in, assisting in, or

18   participating in an investigation, proceeding, or hearing regarding unlawful discrimination. 42

19   U.S.C. § 2000e-3(a); *see* Cal. Govt. Code § 12940(h).

20        Mr. Luckey has identified two incidents where he complained of unlawful discrimination.

21   First, at the October 30, 2008 where Mr. Luckey was instructed to cease removing students from

22   class to counsel them, Mr. Luckey informed Mr. Sullivan that he intended to complaint to the

23   District's human resources department. JSUF at ¶ 12-14. Second, Mr. Luckey contacted the

24   EEOC on March 25, 2010 – the day after he was placed on paid administrative leave – to

25   complain about unlawful race and sex discrimination. He informed the District of the interaction

26   on March 26, 2010. Both of those actions are protected activities.

27   ///

28   ///

14

b. Adverse Employment Action

In this context, any employer action that would likely deter an employee from submitting or supporting a claim of discrimination is an adverse employment action.

As a result of the initial complaint to the District's human resources department, Mr. Luckey complains that Mr. Sullivan stopped interacting with Mr. Luckey other than to provide instruction or discipline. Luckey Depo. at 208:10 – 209:6. That action is not an adverse employment action for purposes of a Title VII or FEHA retaliation claim because it would not deter a reasonable employee from making or supporting a discrimination claim. *Burlington*, 548 U.S. at 67; *Kortan*, 217 F.3d at 1112 (holding that hostile "stares" and "hypercritic[ism]" were not adverse employment actions). Mr. Luckey also indicated that Mr. Sullivan retaliated against him by assigning him to the Kindergarten playground. As noted with regard to Plaintiff's disparate treatment claim, there is no indication that assignment to the Kindergarten playground was an undesirable shift or likely to deter an employee from making complaints of discrimination.[4]

After Mr. Luckey complained to the EEOC regarding discrimination he was terminated. That is an adverse employment action.

c. Causal Link between Protected Activity and Adverse Action

Although Plaintiff was terminated after he reported the allegedly unlawful discrimination to the EEOC, Plaintiff has submitted no evidence or even any allegation that he was terminated based on consideration of his complaint. In fact, at the time of Mr. Luckey's complaint to EEOC he was already being considered for termination based on misconduct that he does not dispute the truth of. Luckey Depo. at 150:23 – 152:21. When the human resources department determined that misconduct allegation had merit, Plaintiff was dismissed. Marroquin Decl. at Exh. M. There is no indication that Plaintiff's complaint had any impact on his termination.

---

[4] Additionally, the refusal to permit Plaintiff to rotate was consistent with the objective of ensuring that Mr. Luckey understood where he was supposed to be, a problem that had resulted in reprimand for him before.

Plaintiff has failed to make the limited showing necessary to prove a causal link between the protected activity and adverse action. Plaintiff cannot state a prima facie case for unlawful retaliation. As a result, Defendant is entitled to summary judgment as to this claim.

## V. Order

Based on the foregoing, IT IS HEREBY ORDERED that:

1.  Defendant's motion for summary judgment is GRANTED as follows:

    a.  Plaintiff's claim of discrimination based on disparate treatment is adjudicated in favor of Defendant;

    b.  Plaintiff's claim of retaliation is adjudicated in favor of Defendant;

2.  This Order disposes of all claims.  The trial date and all dates and orders relating to the trial are vacated.  The Clerk of the Court is respectfully directed to close this case.

IT IS SO ORDERED.

Dated:   December 10, 2015 _____

SENIOR  DISTRICT  JUDGE